IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 11-532 |
| | : | |
| ANTHONY GILLARD | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                           **February 12, 2021**

Defendant Anthony Gillard, who is currently serving a 125-month term of incarceration, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Gillard asserts the coronavirus disease 2019 (COVID-19) pandemic and his health conditions, which he claims place him at an increased risk of harm from the virus, constitute extraordinary and compelling circumstances justifying his release. Although the Government concedes Gillard's medical conditions present extraordinary and compelling circumstances, it opposes the motion because of the seriousness of his offense, his dangerousness to the community, and the numerous measures the Bureau of Prisons (BOP) has taken to manage his medical conditions and prevent the spread of COVID-19 in its facilities. Upon weighing the relevant factors, the Court will deny Gillard's motion for compassionate release.

**BACKGROUND**

On June 15, 2012, Gillard pled guilty to attempted robbery which interfered with interstate commerce in violation of 18 U.S.C. § 1951, use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Gillard, acting alone, attempted to rob a check cashing store at gunpoint. When the store clerk notified the police, Gillard fled, led police on a foot pursuit, and resisted arrest. In addition to the loaded semiautomatic handgun, police recovered a pair of black glasses, a roll of duct tape, a pair

of black gloves, and a large pocket knife. On March 28, 2013, the Court sentenced Gillard to a term of 125 months' imprisonment. His anticipated release date is January 5, 2023.

Since Gillard's sentencing, much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Symptoms of Coronavirus,* Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last updated December 22, 2020). To date, the virus has infected nearly 25,152,433 people in the United States and resulted in 419,827 deaths. *See United States COVID-19 Cases and Deaths by State*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 21, 2021).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People at Increased Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Jan. 4, 2021). High risk underlying medical conditions include chronic kidney disease, serious heart conditions, severe obesity, sickle cell disease, cancer, and immunocompromised conditions from smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id*.

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public

health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In many states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Nonessential businesses have closed their doors, schools have closed, and people are avoiding gatherings of any kind.

In light of the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/index.html (last updated Jan. 27, 2021). Nevertheless, in response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

Gillard is 69 years old and suffers from type II diabetes. On June 1, 2020, Gillard submitted a request for compassionate release to the warden of FCI Fort Dix. *See* Def's Mot. 2, ECF No. 58. On July 14, 2020, he filed the instant motion for compassionate release. *See id*. Gillard argues COVID-19 and his high risk of serious illness or death should he contract COVID-19 presents extraordinary and compelling reasons that support his immediate release. Gillard further argues the time he has already served in prison accomplishes the goals of sentencing and he is not a danger to the community. The Government opposes Gillard's motion and argues he presents a danger to the community and, regardless of his health problems and the threat of COVID-19, his medical

conditions are well controlled in BOP custody and he has not satisfied other elements required to grant compassionate release. *See* Gov't's Resp. to Def.'s Mot. 14, ECF No. 60. Specifically, the Government argues the relevant sentencing factors and his dangerousness to the community weigh against his release.

**DISCUSSION**

Although Gillard's health conditions present extraordinary and compelling reasons for a sentence reduction, he is a danger to the community and the relevant sentencing factors weigh against granting his release. The Court will therefore deny his motion for compassionate release.

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[1] In relevant part, § 3582(c)(1)(A) provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Congress, however, did not define the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 28 U.S.C. § 994(t). Rather, Congress delegated the authority to the U.S. Sentencing Commission, who "shall describe what should be considered

---

[1] A defendant may move for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Gillard submitted a request to the warden of FCI Fort Dix on June 1, 2020, and the warden took denied his request. Therefore, Gillard has exhausted his administrative remedies.

4

extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id*.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction pursuant to § 3582(c)(1)(A) may be ordered where a court determines:

"[A]fter considering the factors set forth in 18 U.S.C. § 3553(a)," that—

(1) (A) extraordinary and compelling reasons warrant the reduction; . . .

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Application Note 1 to § 1B1.13 enumerates three specific reasons that qualify as "extraordinary and compelling" based on the medical condition, age, or family circumstances of the defendant. U.S.S.G. § 1B1.13 n.1(A)–(C). Application Note 1 further provides a fourth "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* n.1(D).

In addressing a motion for compassionate release pursuant § 3582(c)(1)(A), a court must therefore consider (1) whether there are extraordinary and compelling reasons for release, (2) the § 3553(a) sentencing factors, (3) dangerousness to the community as defined by § 3142(g), and (4) other policy statements by the Sentencing Commission. *See* U.S.S.G. § 1B1.13.

With regard to the first factor, Gillard argues extraordinary and compelling reasons exist because of his vulnerability to COVID-19 in prison, given his underlying health conditions, which place him at a high risk of serious illness. In *United States v. Raia*, the Third Circuit held "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory

5

role, and its extensive efforts to curtail the virus's spread." 954 F.3d 594, 597 (3d Cir. 2020). As a result, Gillard's generalized concern about COVID-19 and the BOP's efforts in containing the virus at FCI Fort Dix is insufficient by itself to justify compassionate release. Gillard's medical records show his ailments are well-controlled, notwithstanding the COVID-19 pandemic. *See* Gov't's Resp. to Def.'s Mot. Ex. A, ECF No. 61. However, the Government concedes Gillard's health conditions, combined with the COVID-19 pandemic, satisfy Note 1(A) of U.S.S.G. § 1B1.13. Gov't's Resp. to Def.'s Mot. 14 n.5, ECF No. 60. The Court therefore finds Gillard's diabetes presents extraordinary and compelling circumstances.

The Court moves to the § 3553(a) factors which provide the following considerations for granting compassionate release:

- (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
- (2) the need for the sentence imposed—
  - (A) to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense,
  - (B) to afford adequate deterrence to criminal conduct,
  - (C) to protect the public from further crimes of the defendant, and
  - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.

§ 3553(a)(1)–(2). The nature and circumstances of Gillard's offense are serious. He attempted to rob a check cashing store with a loaded semiautomatic weapon. He physically restrained the female victim and displayed the firearm in a threatening fashion. When the clerk alerted the authorities, Gillard led police on a chase to avoid capture and resisted arrest by officers. The Court imposed a sentence of 125 months to reflect the serious nature of Gillard's offense, his long personal history of violence, and the statutory purposes of punishment contained in § 3553(a)(2).

Gillard has served 95 months of his 125-month sentence. However, granting a sentence reduction would severely undermine the statutory purposes of punishment. When the Court sentenced Gillard—a then-62-year-old man—to 125 months' imprisonment, it did so precisely because the nature of his offense, his history of violent crime, and the purposes of punishment warranted such a lengthy sentence. Those same factors weigh against Gillard's release now.

Turning to Gillard's dangerousness, the Court finds he poses a threat to the community. The Sentencing Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The relevant § 3142(g) factors are "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Gillard's criminal history demonstrates he has lived a life of violent crime. His background illustrates not only his proclivity for violence but an astounding tendency to perpetrate violence while under court supervision. At age 26, Gillard and an accomplice robbed a victim at gunpoint. After serving part of his custodial sentence, Gillard twice violated the conditions of his parole and was recommitted to serve the remainder of the unexpired term. Then at age 30, he was convicted of carrying a firearm without a license. Four months later, he was convicted of third-degree murder and served approximately 19 years in prison for that offense. Undeterred, Gillard then perpetrated the instant offense at age 60. Over a period of almost 40 years, Gillard has demonstrated extremely

violent tendencies and a propensity for flouting the authority of the courts and prisons. Accordingly, he has failed to prove he is not a danger to his community.

In conclusion, the Court finds, despite Gillard's higher risk health conditions, compassionate release is inappropriate due to the § 3553(a) factors and the danger he poses to the community. *See, e.g.*, *United States v. Gamble*, No. 18-22, 2020 WL 1955338, at *6–7 (D. Conn. Apr. 23, 2020) (denying compassionate release in part because defendant's diabetes is under control, COVID-19 risk is higher in the community, and the defendant has an significant criminal history of drug and firearm offenses); *United States v. Soto*, No. 16-138, 2020 WL 3316003, at *2 (D. Colo. June 18, 2020) (denying compassionate release because the defendant has a series of robbery convictions, remains a threat at age 74, had similar health conditions at the time of his most recent offense, and has incurred disciplinary infractions). Therefore, the motion for compassionate release will be denied.

**CONCLUSION**

The Court will deny Gillard's motion for compassionate release because the § 3553(a) sentencing factors and his dangerousness to the community weigh against reducing his original 125-month sentence to time served.

An appropriate order follows.

                                                          BY THE COURT:

                                                          /s/ Juan R. Sánchez
                                                          Juan R. Sánchez, C.J.